COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JAVIER GONZALEZ, | § | No. 08-19-00062-CR |
| Appellant, | § | Appeal from the |
| v. | § | 34th Judicial District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20170D04716) |

## **O P I N I O N**

A jury convicted Appellant Javier Gonzalez of one count of "Engaging in Organized Criminal Activity-Murder" and three counts of "Engaging in Organized Criminal Activity-Aggravated Assault," and sentenced him to 56 years' in prison. Appellant raises three issues on appeal, contending that there was insufficient evidence of his intent to commit murder, that the jury had no rational basis for rejecting his claims of self-defense or the defense of others, and that he was denied the effective assistance of counsel at trial. Finding no reversible error, we affirm the trial court's judgment.

## I. BACKGROUND

On the evening of July 30, 2017, a deadly confrontation occurred at an El Paso nightclub between two rival motorcycle gangs in which Appellant, the El Paso chapter vice-president of the "Kinfolk" gang, admittedly shot and killed Juan Martinez, the chapter president of the "Bandidos" gang. Appellant also seriously wounded two other Bandidos members, Ballardo Salcido and

1

David Villalobos, as well as Juan Vega-Rivera, a member of a Bandidos "support club." Appellant initially fled the scene, and he was subsequently apprehended. He admitted to the shooting in a recorded police interview, but he claimed both during the interview and through his testimony at trial that he lacked any intent to kill or cause serious bodily injury to any of his victims. Rather, he claimed that he acted in self-defense or in defense of others at the time of the shooting.

According to Appellant, he had been at another bar prior to the shooting with four other Kinfolk members, including Manny Gallegos and Derek Mercado. Appellant claimed that he had been unaware that Mercado and Gallegos had left the bar until he received a frantic phone call from Mercado saying that he and Gallegos needed help, as they were either being attacked or were about to be attacked at a nearby club known as "Mulligan's Chopped Hog." As Mulligan's was known to be frequented by Bandidos members, Appellant assumed that the Bandidos were responsible for the attack. Appellant recalled telling two other Kinfolk members who were at Jake's with him that he was leaving on an "emergency," and the two members followed him on their motorcycles to Mulligan's. According to Appellant, he went to Mulligan's with the intent to "defuse" the situation after receiving Mercado's phone call claiming to be under attack.

The jury had the benefit not only of Appellant's testimony, but also several video cameras that recorded what happened at Mulligan's. One camera captured the bar area, another the entryway from the inside, and a third the outer entrance. Based on those videos and on phone records, it was apparent that Mercado made the phone call to Appellant as Mercado and Gallegos were walking into Mulligan's, and well before any confrontation had taken place. The footage further demonstrated that after Gallegos and Mercado entered the club and ordered a drink, the Club's manager approached them and appeared to be asking them to leave, while several Bandidos members began forming a circle around the two men. Although it is unclear what, if anything,

2

may have provoked him--none of the videos have audio--Gallegos punched Martinez and a fight immediately broke out, with as many as eight Bandidos members encircling Gallegos, punching him, and pushing him into a corner of the bar. The fight ended shortly thereafter, and the video footage shows Mercado attempting to help Gallegos off the ground, as the various Bandidos members involved in the fight began dispersing and walking away.

Just at that time, Appellant, along with two other Kinfolk, are seen on the video footage entering the club. Appellant is wearing a helmet with a plastic visor. As he is entering the building, and before he has a view of what is going on inside, he appears to be pulling a gun out and holding it with both hands in a ready position. Although Appellant admitted at trial that the video footage revealed that the fight was over when he entered the club, he testified that he nevertheless took his gun from his pocket when entering the club out of fear for his own safety and that of Gallegos and Mercado.[1] Appellant further claimed in both his interview and at trial that when he entered the club, he saw Gallegos and Mercado on the ground in a corner of the bar, pinned down and being beaten on by the Bandidos members, and believed they were already dead or in grave danger. But the video belies that he could have seen them in the corner given his vantage point at the entryway of the bar.

Appellant also testified that he believed the Bandidos members had knives and were about to stab Gallegos and Mercado. Appellant claimed that almost instantaneously, several of the Bandidos members approached him in a threatening manner, yelling that they were going to kill all of them. He further recalled that one of the approaching Bandidos members had a knife in his hand and another appeared to be reaching for a knife in his vest pocket. According to Appellant, he warned them to stop, but they lunged at him with their knives, screaming and making "death

---

[1] Appellant admitted that he purchased the gun two months before the shooting, and that he lied on the required ATF form when purchasing the gun, stating that he had not been dishonorably discharged from the armed forces.

signs," and he claimed that he therefore fired his gun in order to protect himself and his fellow Kinfolk members. The video footage appears to show one bandito member throwing a punch and lunging toward a Kinfolk, but no knife is visible on the video.[2] At that time, Appellant began firing his handgun at the Bandidos.

Although Appellant could not recall how many times he fired his weapon, a subsequent autopsy revealed that Martinez, who died from his gunshot wounds, had been shot seven times. As well, the record revealed that Appellant also shot and seriously wounded three other victims.

Immediately after the shooting, Appellant ran from the club, but was tackled outside by two Bandidos members. Appellant was able to break free, and fled the scene, first going to Gallegos' house, and later driving his truck to Arizona. Upon his return, Appellant was arrested and later indicted on one count of "Engaging in Organized Criminal Activity-Murder," and three counts of "Engaging in Organized Criminal Activity-Aggravated Assault."

At trial, Appellant repeatedly stated that he had no intent to murder the victims when he walked into the club, and that he only fired his weapon in order to protect his own life and the lives of his fellow Kinfolk members. The State, however, posited a different theory of the case, arguing that the shooting was part of a calculated plan to kill Martinez, in which Gallegos and Mercado went to Mulligans to provoke a fight so that Appellant could then claim that he came to the club to defend them or to otherwise set up a claim of self-defense as a pretext for the shooting.

At the close of trial, the jury was instructed on the law of self-defense and the defense of others, but the jury apparently rejected those defensive theories and found Appellant guilty of all four counts in the indictment, sentencing him to 56 years' incarceration in prison, and a $10,000.00 fine.

---

[2] A knife was found on the floor of the bar, and in the vest of one of the victims.

## II.  ISSUES ON APPEAL

Appellant raises three issues on appeal.   In his first two issues, which we address together, Appellant contends that the evidence was legally insufficient to support a finding that he acted with the intent to murder Martinez, and that no rational jury could have rejected his claim of self-defense or the defense of others.   In his third issue, Appellant argues that he received ineffective assistance of counsel at trial, as his trial counsel did not request any instructions on the lesser included offenses of manslaughter and "deadly conduct," and further failed to request a "multiple assailants" instruction.

## III.  SUFFICIENCY OF THE EVIDENCE

### A.  Standard of Review

The constitutional guarantee of due process requires that every conviction must be supported by legally sufficient evidence.  *See Jackson v. Virginia*, 443 U.S. 307 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010).   In a legal sufficiency challenge, we focus solely on whether the evidence, when viewed in the light most favorable to the verdict, would permit *any* rational jury to find the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318-19; *Brooks*, 323 S.W.3d at 912 (establishing legal insufficiency under *Jackson v. Virginia* as the only standard for review of the evidence).

Applying that standard, we recognize that our system designates the jury as the sole arbiter of the credibility and the weight attached to the testimony of each witness.  *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex.Crim.App. 2020); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014).   Only the jury acts "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007), *quoting Jackson*, 443 U.S. at 319.   In doing so, the jury may choose

5

to believe or disbelieve that testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex.Crim.App. 2008). The jury remains at liberty to believe "all, some, or none of a witness's testimony." *Metcalf*, 597 S.W.3d at 855. When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Dobbs*, 434 S.W.3d at 170; *see also Jackson*, 443 U.S. at 319.

In conducting our review, we also keep in mind that circumstantial evidence is just as probative as direct evidence in establishing guilt, and that circumstantial evidence alone may be sufficient to sustain a conviction. *Dobbs*, 434 S.W.3d at 170. Each fact need not point directly and independently to the guilt of the defendant, so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Dobbs*, 434 S.W.3d at 170; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007).

We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson.*" *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). However, "[w]e are not to sit as a thirteenth juror reweighing the evidence or deciding whether we believe the evidence established the element in contention beyond a reasonable doubt[.]" *Blankenship v. State*, 780 S.W.2d 198, 207 (Tex.Crim.App. 1988) (en banc). Instead, "we test the evidence to see if it is at least conclusive enough for a reasonable factfinder to believe based on the evidence that the element is established beyond a reasonable doubt." *Id.*, *citing Jackson*, 443 U.S. at 318.

**B. The Charged Offense**

A person commits the offense of engaging in organized criminal activity if, with the intent to establish, maintain, or participate as a member of a criminal street gang, he commits or conspires to commit one of several enumerated offenses, including murder. TEX.PENAL CODE ANN.

§ 71.02(a)(1). In turn, a "criminal street gang" is defined as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." TEX.PENAL CODE ANN. § 71.01(d). Appellant does not challenge the finding that he committed the murder with the intent to participate as a member of a criminal street gang, as alleged in the indictment. And at trial, the evidence established that both the Bandidos and the Kinfolk gangs met the criteria set forth by statute for being criminal street gangs, as defined by Chapter 71 of the Texas Penal Code. Appellant further admitted that he was a member of the Kinfolk gang.

However, Appellant does dispute that he had the requisite mental state necessary to support a finding that he committed murder. By statute, a person commits murder either by (1) "intentionally or knowingly" causing a death, or (2) intending to cause "serious bodily injury" through an act "clearly dangerous to human life that causes the death of an individual." TEX.PENAL CODE ANN. § 19.02(b)(1), (2). A person acts "intentionally" with respect to a result of his conduct when it is his conscious objective or desire to cause the result. *See* TEX.PENAL CODE ANN. § 6.03(a). A person acts "knowingly" with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

Self-defense and the defense of others, are legal justifications for what is otherwise an intentional killing. Section 9.31 of the Texas Penal Code provides that a person is justified in using force against another when and to the degree that person reasonably believes the force is immediately necessary to protect himself against another person's use or attempted use of unlawful force. *Gamino v. State*, 537 S.W.3d 507, 510 (Tex.Crim.App. 2017); *see also Alonzo v. State*, 353 S.W.3d 778, 782 (Tex.Crim.App. 2011) (discussing self-defense as a justification for both murder and manslaughter). But subsection (b) provides in part that the use of force against

7

another is not justified "if the actor provoked the other's use or attempted use of unlawful force, unless: (A) the actor abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and (B) the other nevertheless continues or attempts to use unlawful force against the actor . . . ." TEX.PENAL CODE ANN. § 9.31(b)(4). Section 9.32 provides that an actor may use deadly force, "if the actor would be justified in using force against the other under Section 9.31; and when and to the degree the actor reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force." *Alonzo*, 353 S.W.3d at 782, *quoting* TEX.PENAL CODE ANN. § 9.32(a)(1), (2)(A). Similarly, Section 9.33 of the Penal Code provides that a "person is justified in using force or deadly force against another to protect a third person if: (1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 or 9.32 in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person." TEX.PENAL CODE ANN. § 9.33. In effect, a person defending on the grounds of defense of a third person stands in the "shoes of the third person." *Hughes v. State*, 719 S.W.2d 560, 564 (Tex.Crim.App. 1986). And finally, Section 1.07 of the Penal Code defines the term, "reasonable belief," to mean a "belief that would be held by an ordinary and prudent man in the same circumstances as the actor." TEX.PENAL CODE ANN. § 1.07 (42).

The defendant bears the initial burden to produce evidence supporting a claim of self-defense or defense of third persons; if that burden is met, the burden then shifts to the State to disprove the defense. *See Braughton v. State*, 569 S.W.3d 592, 608 (Tex.Crim.App. 2018). The defendant's burden of production requires him to adduce some evidence that would support a

8

rational finding in his favor on the defensive issue. *Id*. By contrast, the State's burden of persuasion "is not one that requires the production of evidence; rather it requires only that the State prove its case beyond a reasonable doubt." *Id*. at 608-609, *quoting Zuliani v. State*, 97 S.W.3d 589, 594 (Tex.Crim.App. 2003). Thus, "[i]n resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Id.* at 609, *quoting Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim.App. 1991). A guilty verdict by a jury is an implied rejection of a defendant's self-defense claim. *See Braughton*, 569 S.W.3d at 609. We review the legal sufficiency of the evidence to support a jury's rejection of a self-defense claim under the same *Jackson v. Virginia* standard set forth above. *Id.* at 608-09; *see also Smith v. State*, 355 S.W.3d 138, 144 (Tex.App.--Houston [1st Dist.] 2011, pet. ref'd) (applying *Jackson v. Virginia* standard to jury's rejection of self-defense claim).

### 1. Evidence of appellant's intent

Appellant contends that the record contains no direct or circumstantial evidence that he had a "conscious objective" to kill Martinez on the night in question, arguing that he went to Mulligan's in response to Mercado's phone call with the intent to diffuse the situation, and only fired his weapon when confronted with what he believed to be a situation in which both his life and his fellow Kinfolk were at stake. Appellant points out that he was the only witness to testify to what occurred at Mulligan's that evening, and that given his undisputed testimony that he had no intent

9

to kill Martinez when he first entered the club, no rational jury could have found that he had a "conscious objective or desire" to commit murder. We disagree for several reasons.

First, the requisite mental state for murder is almost always proven circumstantially, and may be "inferred from the circumstances under which a prohibited act or omission occurs." *See Hernandez v. State*, 819 S.W.2d 806, 810 (Tex.Crim.App. 1991); *Hart v. State*, 89 S.W.3d 61, 64 (Tex.Crim.App. 2002). Accordingly, in determining a defendant's mental state, the jury may consider evidence of the circumstances surrounding the crime, including the events occurring before, during, or after the offense. *See In re I.L.*, 389 S.W.3d 445, 456 (Tex.App.--El Paso 2012, no pet.), *citing Beltran v. State*, 593 S.W.2d 688, 689 (Tex.Crim.App. 1980); *see also Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007) ("In reviewing the sufficiency of the evidence, we should look at events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.") (internal quotation marks omitted). In addition, the jury may infer a defendant's intent from the method of committing the crime and from the nature of wounds the defendant inflicted on the victims. *See Hart*, 89 S.W.3d at 64; *see also Guevara v. State*, 152 S.W.3d 45, 50 (Tex.Crim.App. 2004). In particular, when a defendant has used a deadly weapon, such as a firearm, in the commission of his crime, the jury may infer the specific intent to kill the victim, and such an inference is almost always considered conclusive.[3] *See Cavazos v. State*, 382 S.W.3d 377, 384 (Tex.Crim.App. 2012); *see also Threadgill v. State*, 146 S.W.3d 654, 663 (Tex.Crim.App. 2004) (evidence showing appellant fired a deadly weapon at close range at the victim was

---

[3] By statute, a firearm is considered a deadly weapon per se. *See* TEX.PENAL CODE ANN. § 1.07(17) (a deadly weapon means a "firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or . . . anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."); *see also Ex parte Carrasco*, 750 S.W.2d 222, 224 (Tex.Crim.App. 1988) (recognizing that a pistol is a deadly weapon per se).

10

sufficient to support a rational jury's finding beyond a reasonable doubt that appellant intentionally caused the victim's death); *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex.Crim.App. 1993) (recognizing that a jury may infer a defendant's intent to commit murder from his use of a deadly weapon in a deadly manner and such inference is almost always conclusive).

In this case, the jury could have reasonably inferred Appellant's intent to kill or cause serious bodily injury to Martinez from Appellant's several actions, including that he entered Mulligan's with a loaded firearm before knowing the situation inside the bar. Once inside the bar, Appellant pointed his gun at Martinez, and then shot him seven times. In addition, the jury could have considered the fact that Appellant immediately fled the scene, without attempting to assist Martinez or any of his other victims, and thereafter left the State, as evidence of his guilt. *See Devoe v. State*, 354 S.W.3d 457, 470 (Tex.Crim.App. 2011) (recognizing that flight is a circumstance from which an inference of guilt may be drawn); *see also In re J.A.B.*, 440 S.W.3d 818, 823 (Tex.App.--El Paso 2013, no pet.) (same).

Moreover, when a defendant raises claims of self-defense or defense of others in a murder case, he admits that he acted intentionally in committing a homicide, but interposes such claims as a justification for his actions. *See Alonzo v. State*, 353 S.W.3d 778, 780 n.8 (Tex.Crim.App. 2011) (a defendant in a murder case who claims self-defense admits that he acted intentionally in committing the homicide, not merely recklessly); *Jordan v. State*, 593 S.W.3d 340, 343 (Tex.Crim.App. 2020) ("Self-defense is a confession-and-avoidance defense requiring the defendant to admit to his otherwise illegal conduct [and] he cannot both invoke self-defense and flatly deny the charged conduct."). And this is so even when, as here, the defendant testifies at trial that he did not harbor a conscious intent to kill his victim, but acknowledges that he intentionally fired his gun at his victim in order to protect himself or others. *See Gamino v. State*,

537 S.W.3d 507, 512 (Tex.Crim.App. 2017) (recognizing that a defendant can "*sufficiently* admit to the commission of the offense" of murder while denying an intent to kill), *quoting Martinez v. State*, 775 S.W.2d 645, 647 (Tex.Crim.App. 1989). So, having admitted to an intentional act, but justified it with a claim of self-defense, Appellant put the jury in the posture of deciding the case based on comparing his version of events to the video evidence of the shooting. As we discuss next, the jury had objective evidence that challenged Appellant's version of events.

## 2. *The rejection of Appellant's claim of self-defense*

We conclude that there was legally sufficient evidence from which a rational jury could have rejected Appellant's claim that he acted in self-defense or defense or others. First, Appellant claimed that he went to Mulligan's based on Mercado's frantic phone call saying that he and Gallegos needed help, as they were either being attacked or were about to be attacked. The bar video, however, shows that the phone call occurred as Mercado entered the bar and before he encountered any Bandidos gang member. Appellant further claims that when he entered the club, he saw Gallegos and Mercado on the ground in a corner of the bar, pinned down and being beaten on by the Bandidos members, and believed they were already dead or in grave danger. But the video does not support that claim; the fight appeared to be over and Gallegos and Mercado were being ushered out as Appellant entered the bar.

Appellant had also pulled his gun before he had a clear view of what was transpiring in the bar. And while Appellant finds it significant that two or three Bandidos members lunged at him immediately before the shooting, the jury could have concluded, based on its review of the surveillance footage, that the Bandidos members did so in order to try to protect themselves from Appellant who was facing them with gun in hand. Or alternatively, the jury could have viewed the video to show a Bandidos gang member lunging towards another Kinfolk member, but without

12

a knife in hand as Appellant claimed. In that event, Appellant answered non-deadly force with deadly force, which the law does not allow. Stacked on these discrepancies in Appellant's theory, the jury also knew that Appellant came into the bar wearing his motorcycle helmet (when no one else was similarly outfitted), and after the shooting, he fled the scene, and the State.

Accordingly, the jury could have rejected Appellant's version of the events, and instead believed the State's theory that Appellant and his fellow Kinfolk members planned to provoke the fight with the Bandidos members at the club, so that Appellant would have a pretext for shooting Martinez under the guise of self-defense or the defense of others. And under such circumstances, Appellant would have no right to claim that he was justified in killing Martinez. *See Smith v. State*, 965 S.W.2d 509, 512 (Tex.Crim.App. 1998) ("The rule of law is that if the defendant provoked another to make an attack on him, so that the defendant would have a pretext for killing the other under the guise of self-defense, the defendant forfeits his right of self-defense."); *see also Torres v. State*, 543 S.W.3d 404, 415-16 (Tex.App.--El Paso 2018, pet. ref'd) (recognizing that "provoking the difficulty is a limitation on a defendant's right to self-defense).

And finally, we reject Appellant's argument that simply because he was the only witness to the shooting who testified at trial that the jury was compelled to believe his version of the events. A jury is free to disbelieve all or any part of any witness's testimony and is not required to accept a witness's testimony even when it is not contradicted by other witnesses. *See Braughton*, 522 S.W.3d at 732; *see also Lancon v. State*, 253 S.W.3d 699, 707 (Tex.Crim.App. 2008) (recognizing that a jury may choose to believe or disbelieve the testimony of any witness at trial); *Smith v. State*, 355 S.W.3d 138, 146 (Tex.App.--Houston [1st Dist.] 2011, pet. ref'd) (statement of appellant and his witnesses did not conclusively prove claim of self-defense in light of other evidence presented at trial by the State). And, as explained above, the video footage from the surveillance cameras

told a different story than Appellant did, thereby calling his credibility into question, and the jury was therefore free to reject Appellant's version of the events in favor of the State's theory of guilt. *See Raza v. State*, No. 05-17-00066-CR, 2018 WL 1062451, at \*3 (Tex.App.--Dallas Feb. 27, 2018, no pet.) (mem. op, not designated for publication) (jury could reject defendant's claim of self-defense where video footage demonstrated that victim was not posing any danger to victim or others at the time defendant shot him); *see also Shannon v. State*, No. 08-13-00320-CR, 2015 WL 6394922, at \*4 (Tex.App.--El Paso Oct. 21, 2015, no pet.) (not designated for publication) (where contradictory evidence was presented at trial, the jury could have reasonably concluded that the defendant was not credible, and could have rationally rejected a self-defense claim).

We therefore conclude that the jury acted rationally in finding that Appellant had the requisite intent to murder Martinez and in rejecting his claim of self-defense. Appellant's Issues One and Two are overruled.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In Issue Three, Appellant contends that his trial attorney was ineffective for failing to request instructions on the lesser included offenses of manslaughter and deadly conduct, and by failing to request a "multiple assailants" jury instruction as to all charges in the indictment. The State counters that the record is not sufficiently developed to support Appellant's claim. We agree with the State.

### A. Standard of Review and Applicable Law

Under the Sixth Amendment to the United States Constitution and Section Ten of Article 1 of the Texas Constitution, a criminal defendant is entitled to representation by effective, competent counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex.Crim.App. 2011), *citing* U.S. CONST. amend. VI and Tex. Const. art. 1, § 10. A criminal

14

defendant, however, is not entitled to a flawless performance from counsel; "isolated lapses or mistakes during the trial are not necessarily indicative of ineffectiveness." *Calderon v. State*, 950 S.W.2d 121, 128 (Tex.App.--El Paso 1997, no pet.), *citing McFarland v. State*, 845 S.W.2d 824, 843 (Tex.Crim.App. 1992), *cert. denied*, 508 U.S. 963 (1993). Rather, the defendant must show that counsel's performance was deficient to the extent that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). To prevail on a claim of ineffective assistance of counsel, Appellant must establish by a preponderance of evidence that (1) the attorney's performance was deficient, and that (2) the deficient performance deprived him of a fair trial. *Strickland*, 466 U.S. at 687; *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex.Crim.App. 2005). Appellant must satisfy both *Strickland* elements, and the failure to show either deficient performance or prejudice will defeat the claim. *Perez v. State*, 310 S.W.3d 890, 893 (Tex.Crim.App. 2010); *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex.Crim.App. 2003).

Under the first prong of the *Strickland* test, Appellant must show the attorney's performance fell below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App. 1999). Stated otherwise, he must show that counsel's actions do not meet the objective norms for professional conduct of trial counsel. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Crim.App. 2002). We presume, however, that the attorney's representation fell within the wide range of reasonable and professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001). Ineffective assistance claims must be firmly founded in the record to overcome this presumption. *Thompson*, 9 S.W.3d at 813; *Coffman v. State*, 465 S.W.3d 797, 800 (Tex.App.--Fort Worth 2015, no pet.) (recognizing that an ineffective assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate the meritorious

15

nature of the claim.") (internal quotation marks omitted). Consequently, a direct appeal is usually an inadequate vehicle for raising an ineffective assistance of counsel claim because the record is generally undeveloped as to why trial counsel did what he or she did.[4] *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005); *Thompson*, 9 S.W.3d at 814 n.6.

Generally, in the absence of direct evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can be imagined. *Garcia v. State*, 57 S.W.3d 436, 440-41 (Tex.Crim.App. 2001). In more rare circumstances a court may address an ineffective assistance claim when the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392 (internal quotation marks omitted); *see also Rylander*, 101 S.W.3d at 111 (noting that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective"). In deciding whether a case falls into that category, the key question is whether trial "counsel's performance [fell] below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflect[s] the trial counsel's subjective reasons for act[ing] as [he] did." (internal quotation marks omitted). *See Ex parte Bryant*, 448 S.W.3d 29, 39-40 (Tex.Crim.App. 2014). As the Court of Criminal Appeals has noted, however, this poses a "difficult hurdle to overcome," and a "reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim." *Lopez*, 343 S.W.3d at 143; *see also Salinas*, 163 S.W.3d at 740; *Thompson*, 9 S.W.3d at 813-14.

---

[4] An application for a writ of habeas corpus is typically the more appropriate vehicle to raise a claim of ineffective assistance of counsel, as such a vehicle allows a defendant to develop the record sufficiently so that his claim can be properly reviewed. *See Rylander*, 101 S.W.3d at 110, *citing Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Crim.App. 2002). A defendant may develop the record at a hearing on a motion for new trial when appropriate. *See Jones v. State*, 133 S.W.3d 307, 312 (Tex.App.--Fort Worth 2004, no pet.). In the present case, however, Appellant did not file such a motion.

16

Under the second *Strickland* prong, in a case that was actually tried, the defendant must establish that there is a reasonable probability that but for the attorney's deficient performance, the outcome of the case would have been different. *See Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A "reasonable probability" is that which is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Jackson v. State*, 973 S.W.2d 954, 956 (Tex.Crim.App. 1998). To prove prejudice, appellant must demonstrate a reasonable probability that the result of his trial would have been different had counsel not performed deficiently. A reasonable probability is one sufficient to undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 693; *McFarland*, 845 S.W.2d at 842-43.

## B. Failure to Request Instructions on Lesser Included Offenses

Appellant first claims that trial counsel acted ineffectively by failing to request an instruction on the lesser included offenses of manslaughter and deadly conduct. Relevant here, the Code of Criminal Procedure defines one offense to be a lesser-included offense of another if "(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;" or "(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission . . . ." TEX.CODE CRIM.PROC.ANN. art. 37.09.

Manslaughter can be considered a lesser-included offense of murder, as the only distinction between the statutory elements of the two offenses is the culpable mental state. *See Cavazos v. State*, 382 S.W.3d 377, 383-84 (Tex.Crim.App. 2012) (recognizing that manslaughter is a lesser included offense of murder). Additionally, a defendant may commit the offense of "deadly conduct" by recklessly engaging "in conduct that places another in imminent danger of serious bodily injury" or "knowingly discharg[ing] a firearm at or in the direction of . . . one or more

17

individuals . . . ." TEX.PENAL CODE ANN. § 22.05(a),(b)(1). Several courts have concluded that the offense of deadly conduct by discharging a firearm can be considered a lesser included offense of murder when, as here, a defendant is charged with shooting his victim. *See e.g. Braughton v. State*, 522 S.W.3d 714, 738-39 (Tex.App.--Houston [1st Dist.] 2017), *aff'd*, 569 S.W.3d 592 (Tex.Crim.App. 2018); *Ortiz v. State*, 144 S.W.3d 225, 232-34 (Tex.App.--Houston [14th Dist.] 2004, pet. ref'd).

But even assuming that the evidence in this case would have supported a lesser included offense charge--an issue we do not decide--Appellant cannot show that the decision to forego the lesser included offenses was not a conscious strategic choice. Because this case comes to us on direct appeal without the benefit of a hearing, trial counsel has not yet had the opportunity to explain his reasons for failing to request any lesser included offense instructions, and we must therefore presume that his failure resulted from a reasonable trial strategy, unless his conduct was so outrageous that no reasonable attorney would have adopted such a strategy. *See Goodspeed*, 187 S.W.3d at 392. And as this Court has previously recognized, the failure to request a lesser-included instruction may be part of a valid and reasonable trial strategy, as trial counsel may find it appropriate to utilize an "all or nothing" approach in seeking an acquittal for his client, particularly when there is some evidence in the record from which a jury could conclude that the defendant was not guilty. *See Jackson v. State*, No. 08-05-00135-CR, 2006 WL 1711098, at *4 (Tex.App.--El Paso June 22, 2006, no pet.) (not designated for publication) (recognizing that the "failure to request an instruction on a lesser-included offense can be a valid and reasonable trial strategy."); *see also Wood v. State*, 4 S.W.3d 85, 88 (Tex.App.--Fort Worth 1999, pet. ref'd) (where there was some evidence in the record tending to prove that defendant was not guilty of the charged offense, "it could be reasonable trial strategy to forego a charge on the lesser offense

and argue for an acquittal on the greater.").  Although an "all-or-nothing" trial strategy of forcing the jury to choose between the greater offense and acquittal, without the alternative of a lesser-included offense, may be risky and might not have been the option chosen by another attorney, this does not make the strategy unreasonable.  *Ex parte White*, 160 S.W.3d 46, 55 (Tex.Crim.App. 2004); *see also Williams v. State*, No. 08-02-00310-CR, 2004 WL 309265, at *6 (Tex.App.-- El Paso Feb. 19, 2004, pet. ref'd) (mem. op., not designated for publication) (requiring a jury to opt between murder and acquittal, although risky, is sometimes successful).  Accordingly, because the record is silent as to trial counsel's reasons for adopting this strategy, we cannot say on this record that Appellant met his burden of establishing that his trial counsel was ineffective for failing to request any lesser included offense instructions.  *See Lynch v. State*, No. 08-15-00180-CR, 2018 WL 3193603, at *4 (Tex.App.--El Paso June 29, 2018, no pet.) (not designated for publication) ("[w]here the record is silent regarding the reason for counsel's omitting to request a charge, it is not possible to decide whether the failure to request the charge is ineffective assistance of counsel because it could have been part of a reasonable trial strategy."); *see also Williams v. State*, No. 01-07-00632-CR, 2009 WL 350608, at *4 (Tex.App.--Houston [1st Dist.] Feb. 12, 2009, no pet.) (mem. op., not designated for publication) (where record did not indicate why trial counsel chose not to request an instruction for a lesser-included offense on the jury charge, appellant failed to prove that there was no plausible professional reason for his failure, and therefore did not satisfy the first prong of *Strickland*).

### C.  The Failure to Request a Multiple Assailants Instruction

And finally, Appellant contends that his trial counsel was ineffective for failing to request a "multiple assailants" instruction.  A multiple assailants instruction informs the jury that when there is evidence that the defendant was being attacked by a group of assailants, he has the right to

use force to defend himself against any member of the group, even if the recipient of the force was not engaging in conduct that would, by itself, justify the use of force. *Jordan v. State*, 593 S.W.3d 340, 345 (Tex.Crim.App. 2020). The right to defend oneself against multiple assailants is a defensive issue for which a defendant is entitled to receive an instruction, and therefore, when the evidence viewed from the defendant's standpoint--regardless of how weak the evidence may be-- shows an attack or threatened attack by more than one assailant, the defendant is entitled to a multiple assailants instruction when requested. *Id.* at 343; *see also*, *Frank v. State*, 688 S.W.2d 863, 868 (Tex.Crim.App. 1985) (recognizing that a "charge which is confined only to the right of self-defense against the deceased is too restrictive if there is evidence that more than one person attacked the defendant."). Moreover, the evidence need not show that "each person defended against was an aggressor in his own right," and instead only "requires evidence that the defendant had a reasonable fear of serious bodily injury from a group of people acting together." *Id.* at 344, *citing Sanders v. State*, 632 S.W.2d 346 (Tex.Crim.App. 1982).

As Appellant points out, he testified at trial that at least three Bandidos members, one of whom had a knife drawn, were lunging at him and shouting threats at the time he fired his weapon, and he therefore contends that he was entitled to a multiple assailants instruction. The State does not deny that Appellant was entitled to such an instruction, and instead contends that we should decline to find his trial counsel ineffective for failing to request the instruction, as the record is silent on the issue of whether trial counsel may have had a reasonable strategy for not requesting the instruction, and because the failure to request the instruction did not harm Appellant's case. We agree with the State on both points.

As explained above, because this matter comes to us on direct appeal, trial counsel has not been given the benefit of explaining his reasons for failing to request a multiple assailants

20

instruction, and we must presume that counsel had a strategic reason for not requesting the instruction if any can be imagined. *See Eyman v. State*, No. 13-15-00589-CR, 2017 WL 3634058, at *5 (Tex.App.--Corpus Christi Aug. 24, 2017, no pet.) (not designated for publication) ("Because the record is silent regarding trial counsel's reasons or strategy for not requesting a multiple assailant self-defense instruction, the presumption of reasonably effective assistance has not been rebutted."); *Pouncy v. State*, No. 14-12-00470-CR, 2013 WL 3580638, at *4 (Tex.App.--Houston [14th Dist.] July 11, 2013, pet. ref'd) (mem. op., not designated for publication) (trial counsel's failure to request a multiple assailants instruction was not so outrageous that the court could conclude on direct appeal that defendant was deprived of effective assistance of counsel, where record was silent on counsel's reasons for failing to request the instruction). And although we cannot be certain of trial counsel's reasons for not requesting the instruction, we note that a reasonable trial attorney may have concluded that such an instruction would have unduly focused the jury on the fact that Appellant did not identify Martinez as being one of the Bandidos members who lunged at him, and that Appellant nevertheless shot Martinez seven times despite the fact that he was not one of the immediate aggressors in the group.

Moreover, we note that trial counsel cannot be considered wholly deficient in his representation of Appellant by failing to request a multiple assailants instruction, where he successfully obtained instructions on both self-defense and defense of others in the jury charge with regard to each of his victims, thereby ensuring that Appellant's defensive theories were considered by the jury. *See Mahavier v. State*, No. 04-10-00414-CR, 2011 WL 2150429, at *2 (Tex.App.--San Antonio June 1, 2011, pet. ref'd) (mem. op., not designated for publication) (holding that counsel's performance was not wholly deficient in failing to request multiple assailants instruction where counsel successfully obtained self-defense instructions on defendant's

21

behalf).   And finally, we find little evidence in the record to suggest that Appellant was harmed by the failure to request the instruction, as the State did not focus on the fact that Martinez was not one of the aggressors in the group that was allegedly attacking Appellant, and instead focused almost exclusively on its theory that the shooting was pretextual, and that Appellant therefore had no right to claim either self-defense or the defense of others.   As such, we do not believe that the outcome of Appellant's trial would have been any different if a multiple assailants instruction had been given.  *See Phillips v. State*, No. 05-99-01569-CR, 2001 WL 1256642, at *1 (Tex.App.--Dallas Oct. 22, 2001, no pet.) (not designated for publication) (where jury was properly instructed on defendant's claim of self-defense, which was rejected by the jury, defendant could not demonstrate that there was a reasonable probability that the outcome of his trial could have been different if he had received a multiple assailants instruction).

Accordingly, we conclude that Appellant has not met his burden of establishing that he was denied ineffective assistance of counsel on this record.   Appellant's Issue Three is overruled.

## V.  CONCLUSION

The trial court's judgment is affirmed.


JEFF ALLEY, Chief Justice

December 22, 2020

Before Alley, C.J., and Palafox, J., and Massengale, V.J.
Massengale, V.J., sitting by assignment

(Do Not Publish)

22