

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00248-CR

CHRISTOPHER JODALE                                                    APPELLANT
COFFMAN

V.

THE STATE OF TEXAS                                                         STATE

----------

## FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY
## TRIAL COURT NO. 2013-0002M-CR

----------

## OPINION

----------

Appellant Christopher Jodale Coffman appeals his conviction and sentence for indecency with a child by sexual contact, arguing in a single issue that trial counsel provided ineffective assistance by allowing him to plead true to the allegations in the motion to adjudicate without first fully investigating and retaining an expert to evaluate his mental abilities. Because the record is

inadequate to support the claim of ineffective assistance of counsel, we overrule Appellant's sole issue and affirm the trial court's judgment.

**Brief Facts**

Appellant pled guilty to the charge of indecency with a child by sexual contact in exchange for a recommendation of six years' deferred adjudication. Approximately one month later, the State filed a motion to adjudicate. The State alleged that Appellant had violated his conditions of community supervision by failing to report to his community supervision officer; failing to report any changes to his employment, address, and telephone number five days before such change; failing to register as a sex offender; contacting the complainant or her guardian; and going in, on, or within 1000 feet of a playground. Appellant was declared indigent, and counsel was appointed for him. As part of a plea bargain, Appellant executed a "Motion to Adjudicate Memorandum," confessing the alleged violations and stating that he could not withdraw his pleas of true if the trial court did not accept the plea bargain. The trial court accepted the memorandum into evidence. The trial court then adjudicated Appellant's guilt but refused to follow the State's punishment recommendation of five years' confinement and refused to allow Appellant to withdraw his pleas of true. The trial court next ordered a supplemental presentence investigation report (PSI) and considered the earlier PSI.

The trial court ordered a mental and competency examination of Appellant by Stacy Shipley, a psychologist. Shipley filed a report with the trial court

2

regarding Appellant's competence and understanding of the system. Shipley specifically addressed Appellant's understanding of the nature of some of his conditions of community supervision, including the failure to register as a sex offender, and the consequences for not complying with those conditions. Shipley reported that Appellant was able to describe his conditions of community supervision; knew that he was supposed to register as a sex offender, "go to classes, not . . . be around kids[, and] do community service"[;] and knew that he faced confinement for violating a condition. Shipley ultimately found Appellant "[c]ompetent to [p]roceed."

Appellant's mother testified that she had adopted Appellant, that he had been physically and sexually abused as a child, that his birth mother had used drugs during her pregnancy, and that he had been classified by the Department of Human Services as mentally retarded with the mental functioning of an eleven-year-old.

Priscilla Kleinpeter, a psychologist who is also a licensed sexual offender provider, also testified. Kleinpeter had one of the only contracts in the Texas Panhandle to treat federally convicted sex offenders. She had one of seven programs to treat civilly-committed sex offenders in her area and had contracts with community supervision and parole departments to treat juvenile and adult sex offenders. She performed a psychosexual assessment on Appellant. A psychosexual assessment involves an intellectual assessment, personality assessment, and risk assessment with recommendations. During her

3

assessment, Kleinpeter learned that Appellant had been diagnosed with mild mental retardation in elementary school and had been in special education classes throughout his school years. She found that he had competed in the Special Olympics and received disability benefits while in school. The results of the intellectual assessment showed Appellant's full scale IQ to be 66. This score in turn demonstrated that he functioned below 99 percent of his peers. Kleinpeter further testified that Appellant functioned at about the level of a ten-, eleven-, or twelve-year-old.

Appellant's personality evaluation was invalid because he was not able to understand the questions due to his intellectual disability. The testing showed that he was at low risk to reoffend. Kleinpeter also testified that Appellant was not able to understand the terms of his community supervision. She testified that she believed a therapeutic group home would be the best place for him.

Patrick Coyle, an employee of Hellen Farabee Centers, the local MHMR facility, worked with mentally retarded individuals to provide them with services they needed. He testified that Appellant could live in an intermediate care facility (ICF), which is a group-home setting. The ICF was supervised, and the workers there could help Appellant remember to report to his community supervision officer and to register as a sex offender and could help keep him from going into child safety zones. The ICF's supervisors could also help him find a job.

Appellant's trial counsel argued that Shipley's opinions were consistent with Kleinpeter's and that the issue in the case was whether Appellant fully

4

understood what was required of him under the terms and conditions of community supervision. She urged the trial court to consider returning Appellant to community supervision, ordering him to a group home, and ordering him to attend the sex offender treatment that he needed. The trial judge explained that he could not return Appellant to community supervision because he had already adjudicated his guilt:

> Since this is an indecency with a child case, I'm not sure I'm authorized—the Court's authorized to grant regular community supervision.
>
> So the Court has given significant time and thought to this case, obviously, since we started this back on October 2013. The Court's going to assess punishment at ten years' imprisonment in the Institutional Division.

**Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense.[1] An ineffective-assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim.[2] Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because

---

[1]*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

[2]*Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

the record is generally undeveloped.[3] In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case.[4] The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.[5] Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct was not deficient.[6]

It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record or when counsel's reasons for failing to do something do not appear in the record.[7] Trial counsel "should ordinarily be afforded an opportunity to explain her actions before being denounced as ineffective."[8] If trial counsel is not given that opportunity, we should not conclude that counsel's performance was deficient unless the

---

[3]*Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *Thompson*, 9 S.W.3d at 813–14.

[4]*Thompson*, 9 S.W.3d at 813.

[5]*See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307.

[6]*Nava*, 415 S.W.3d at 307–08.

[7]*Menefield*, 363 S.W.3d at 593; *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

[8]*Menefield*, 363 S.W.3d at 593.

challenged conduct was "so outrageous that no competent attorney would have engaged in it."[9] As the Texas Court of Criminal Appeals has explained,

> A claimant must generally prove deficiency using affirmative evidence in the trial record sufficient to overcome the presumption that the challenged action was sound trial strategy. However, when no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as he did.[10]

The problem with the case now before this court is that Appellant was already on deferred adjudication community supervision and had already entered an unchallenged guilty plea controlling the disposition of the case. Professional opinions of Appellant's competence to understand the proceedings and the requirements of community supervision conflicted. Based on the record before us, we may speculate, but we cannot determine trial counsel's strategy in proceeding as she did. We note that a writ of habeas corpus will still lie to challenge both the competence of Appellant to stand trial when he entered his original guilty plea and when he entered his pleas of true to the motion to

---

[9]*Nava*, 415 S.W.3d at 308.

[10]*Ex parte Bryant*, 448 S.W.3d 29, 39–40 (Tex. Crim. App. 2014) (citations and internal quotation marks omitted).

adjudicate,[11] to challenge the effectiveness of counsel,[12] or to raise any other issue more properly addressed by writ.[13]

**Conclusion**

Based on the record before us, we are compelled to overrule Appellant's sole issue and to affirm the trial court's judgment.

---

[11]*See* Tex. Code Crim. Proc. Ann. art. 11.07 (West 2015), art. 42.07 (West 2006); *Ex parte Yarborough*, 607 S.W.2d 565, 566 (Tex. Crim. App. 1980) (holding competency can be raised for the first time by post-trial writ of habeas corpus), *overruled on other grounds*, *Manning v. State*, 730 S.W.2d 744 (Tex. Crim. App. 1987); *Henderson v. State*, 132 S.W.3d 112, 115 (Tex. App.—Dallas 2004, no pet.) (same).

[12]*See Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) ("Claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus."); *Ex parte Nailor*, 149 S.W.3d 125, 131 (Tex. Crim. App. 2004) (providing that unlike other claims rejected on direct appeal, claims of ineffective assistance of counsel rejected due to lack of adequate information may be reconsidered on an application for a writ of habeas corpus).

[13]*See Ex parte Moss*, 446 S.W.3d 786, 788 (Tex. Crim. App. 2014) (stating that constitutional rights can be forfeited on habeas due to lack of action but lack of jurisdiction cannot); *Ex parte McCain*, 67 S.W.3d 204, 207 (Tex. Crim. App. 2002) (footnote omitted) (stating that the Great Writ "is available only for relief from jurisdictional defects and violations of constitutional and fundamental rights").

                                        /s/ Lee Ann Dauphinot
                                        LEE ANN DAUPHINOT
                                        JUSTICE

PANEL:  DAUPHINOT, GABRIEL, and SUDDERTH, JJ.

PUBLISH

DELIVERED:  June 11, 2015

9