

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00126-CR

Albino **CEDILLO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 63rd Judicial District Court, Val Verde County, Texas
Trial Court No. 2020-0019-CR
Honorable Steve Hilbig, Judge Presiding

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Patricia O. Alvarez, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: September 13, 2023

DISMISSED IN PART; AFFIRMED

A jury convicted appellant Albino Cedillo on one count of aggravated sexual assault of a child and one count of continuous sexual abuse of a child, and the trial court assessed punishment at fifty-three years' imprisonment for the continuous sexual abuse of a child count. TEX. PENAL CODE ANN. §§ 21.02; 22.021. The trial court signed a final judgment of conviction and sentence regarding the continuous sexual abuse of a child count. In two issues, Cedillo complains that: (1) the evidence is insufficient to support his conviction on both counts; and (2) his trial counsel rendered ineffective assistance. We dismiss for want of jurisdiction, in part, and affirm.

## I. BACKGROUND

At trial, the jury considered the testimony of: (a) Susan,[1] the complainant; (b) Susan's stepmother ("Stepmother"); (c) Jesus Galindo, a sergeant with the Del Rio Police Department; (d) Amanda Negrete, a forensic interviewer; and (e) Cedillo.

### A.    Susan

Susan testified that, when she was around four or five years old, she lived in a house with her mother ("Mother") and her mother's boyfriend, Cedillo, in Del Rio, Texas. Susan specifically recalled a sexual encounter with Cedillo that occurred when she was four years old, testifying:

> I was laying down [on the bed]. My mom was in the shower. And I remember him behind me and he was, like, touching my butt and stuff, like rubbing against me. And I felt something, and it wasn't his hand, and then I felt something go inside of my butt and it hurt really bad. And I remember crying and him telling me that it was okay and that he was sorry and to stop crying.

At fourteen years old at the time of time of trial, Susan testified that it was Cedillo's "private part."

Susan recalled two sexual encounters with Cedillo after her family moved to Center Point, Texas. First, when Susan was approximately six years old, Cedillo rubbed her "thigh area" and then she "felt something, like hard, and it wasn't his hand." Second, when Susan was approximately eight or nine years old, she recalled:

> playing with my brother. And [Cedillo] had called me over to the restroom, he made me touch his private part. And he told me to get a tissue and made me move with it, like, up and down, and there was white stuff coming out, and he, like, cleaned it up. And then I remember going back, playing with my brother.

Susan wanted to tell Mother about Cedillo's sexual contact when the family lived in Del Rio. However, Susan was "too scared that [Mother] would get mad at [her]" or disbelieve her. Indeed,

---

[1] We use pseudonyms for the child complainant and her family to protect the identity of the child. *See* TEX. R. APP. P. 9.10(a)(3).

when Susan was ten years old, she told Mother about Cedillo's sexual contact. However, Mother disbelieved Susan.

Eventually, Susan began living with her father and Stepmother, but she occasionally visited Mother. During one of Susan's visits with Mother, she went to the bathroom and encountered an overnight male guest that Mother had snuck in the window. Susan was "scared" that the man would hurt her "because it happened before." The next day, Susan went to her aunt and uncle's home, and she told them that she was mad at Mother for sneaking the man into her home and about Cedillo's sexual contact with her. Susan also told Stepmother about Cedillo's contact with her.

**B.      Stepmother**

Stepmother began dating Susan's father ("Father") when Susan was approximately five years old. Stepmother recalled that she and Father traveled to Del Rio to pick up Susan for weekend visits. During these visits, Stepmother specifically recalled that Susan "complain[ed] of her bottom hurting when she would go to the bathroom, and at the time [Stepmother] thought it was like constipation." Stepmother also recalled that Susan "would be very sad" when she was returned to Mother at the end of her weekend visits. Stepmother specifically recalled one time where Susan was "in the back seat crying," as they drove to Del Rio to return Susan to Mother. When Susan was approximately nine years old, Susan began living with Stepmother and Father. Shortly thereafter, Susan told Stepmother about Cedillo's sexual abuse. Instead of contacting the police, Stepmother contacted Mother. Stepmother did not call the police until June 2019, when Susan was twelve years old and returned upset after visiting Mother.

**C.      Sergeant Galindo**

Sergeant Galindo testified that, in June 2019, he was assigned a case wherein Susan, who was twelve years old at the time, had made an outcry that Cedillo had sexually abused her six-to-seven years earlier. Sergeant Galindo arranged for Susan to undergo a forensic interview, obtained

Susan's school records to verify where she lived during the relevant period, and photographed the home that Susan lived in when she said the sexual abuse occurred.

## D.      Negrete

Negrete testified that, during a forensic interview, Susan described Cedillo's sexual contact with her. Negrete recalled Susan telling her that on one occasion, when the family lived in Del Rio and Mother showered, Cedillo put his "private part . . . in her bottom." Negrete took Susan's account as an indication of penetration. Negrete also recalled Susan describing another incident, when the family lived in Center Point, wherein Cedillo made Susan "grab his private part with her hand and go, like, up and down with it, and that [Susan] saw white stuff . . . come out of his private part."

## E.      Cedillo

Cedillo denied Susan's allegations. He testified that he and Mother had been in a relationship for approximately ten years. Cedillo worked as a migrant farmer, and he would leave the family's home for four-to-five month stretches. Cedillo recalled that, upon his return, Susan or neighbors told him that Mother had "men in the house." Cedillo first heard of Susan's allegations when she was six-or-seven years old. Mother told Cedillo that "Susan had told her something," and the two confronted Susan. Cedillo offered to call the police "because if somebody would be doing that to my daughter, I would call the police." Susan, according to Cedillo, told them not to call the police and that she was lying because she was mad at Mother.

## F.      Verdict and Judgment

The jury convicted Cedillo on one count of aggravated sexual assault of a child and one count of continuous sexual abuse of a child. At the sentencing hearing, the trial court noted:

> All right. We've had a jury trial, jury found him guilty of continuous sex assault, also of the aggravated sexual assault. My thought is, I will impose sentence

only on the continuous sex assault. I will not impose the sentence on the aggravated sexual assault, as I believe that it would violate the double jeopardy provisions.

However, I'm going to withhold sentencing on that in case there's an appeal. And if we have any issues with the continuous sex assault, then the aggravated sex assault sentence could be imposed in that case. So that's the plan of the Court.

The judgment of conviction comports with the trial court's oral pronouncements, providing in relevant part, "Ct.1: Aggravated Sexual Assault of a Child — Held in Abeyance." The trial court assessed punishment at fifty-three years' imprisonment for the continuous sexual abuse of a child count, and it signed a final judgment regarding that count. Cedillo timely appealed.

## II. DISCUSSION

### A.     Aggravated Sexual Assault of a Child Count

Cedillo's sufficiency challenge implicates both counts. However, we lack jurisdiction over Cedillo's challenge to the aggravated sexual assault of a child count.

In *Thompson v. State*, 108 S.W.3d 287, 289 (Tex. Crim. App. 2003), the defendant was charged in a single indictment with one count of sexual assault of a child and one count of indecency with a child. A jury convicted the defendant on both counts. *Id*. At the sentencing hearing, the trial court orally pronounced a sentence of thirty years on the sexual assault of a child count, but it did not orally pronounce a sentence on the indecency with a child count. *Id*. No one objected. *Id*. The written judgment sentenced the defendant to thirty years' imprisonment for each count. *Id*. The Texas Court of Criminal Appeals observed that:

> Quite simply, [the defendant] was never sentenced on the second count. The trial court made a mistake in entering a sentence of thirty years in the written judgment. Because no sentence was ever rendered, there is no valid judgment on the indecency with a child count. Without a valid written judgment, there is no "conviction" for [the defendant] to appeal.

*Id*. at 290 (citations omitted). On appeal, the defendant sought reversal on both counts. The intermediate appellate court dismissed the defendant's appeal on the indecency with a child count

for want of jurisdiction, but considered and rejected the defendant's sufficiency of the evidence challenge concerning his conviction for the sexual assault of a child count. *Id*. at 289. The defendant petitioned the Texas Court of Criminal Appeals for review, arguing that the intermediate court "should have *either* remanded both counts *or* asserted jurisdiction over both counts." *Id*. at 290. The Texas Court of Criminal Appeals stressed that it "need not address the question of whether there is only *one* proper remedy for this situation; it is enough to determine whether the court of appeals chose *a* proper remedy." *Id*. at 291–92. The court affirmed the intermediate court, noting that it "properly exercised jurisdiction over appellant's conviction for sexual assault and appropriately addressed the merits of that appeal" and that it "correctly dismissed the appeal over the second count for want of jurisdiction." *Id*. at 293.

Following *Thompson*, we will dismiss for want of jurisdiction Cedillo's challenge to the aggravated sexual assault of a child count. We will, however, address Cedillo's challenge to the continuous sexual abuse of a child count.

## B. Continuous Sexual Abuse of a Child

### 1. Standard of Review

Our review of the sufficiency of the evidence is governed by the rules articulated in *Zuniga v. State*, 551 S.W.3d 729, 732–33 (Tex. Crim. App. 2018). When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder.

*Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

**2.       Elements**

A person commits the offense of continuous sexual abuse of a child if, during a period that is thirty or more days in duration, he commits two or more acts of sexual abuse and, at the time of the commission of each act, he is seventeen years of age or older and the victim is a child younger than fourteen.  TEX. PENAL CODE ANN. § 21.02(b) (West 2011).  Although the exact dates of the abuse need not be proven, the offense does require proof that two or more acts of sexual abuse occurred during a period of thirty days or more.  *Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2015, pet. ref'd); *see* TEX. PENAL CODE ANN. § 21.02(d).

**3.       Analysis**

Cedillo's sufficiency challenge contains four subparts.  First, Cedillo argues that it "was never established beyond a reasonable doubt" that the sexual abuse occurred in Val Verde County, Texas, between April 30, 2012, and April 30, 2014.  Cedillo's complainant is misplaced.  The legislature created the offense of continuous sexual abuse of a child in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing acts of sexual abuse.  *See Williams v. State*, 305 S.W.3d 886, 890 n.7 (Tex. App.—Texarkana 2010, no pet.) (citing *Dixon v. State*, 201 S.W.3d 731, 737 (Tex. Crim. App. 2006) (Cochran, J., concurring) ("Perhaps the Texas Legislature can address this conundrum and consider enacting a new penal statute that focuses upon a continuing course of conduct crime — a sexually abusive relationship that is marked by a pattern or course of conduct of various sexual acts.")).  Accordingly, Section 21.02(d) of the Texas Penal Code provides:

> If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed.  The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.

TEX. PENAL CODE ANN. § 21.02(d). The testimony of a child victim alone is sufficient to support a conviction for continuous sexual abuse of a child. TEX. CODE CRIM. PROC. ANN. art. 38.07(b)(1). In this case, Susan testified that her first sexual encounter with Cedillo occurred when she was four years old and lived in Del Rio. Stepmother provided circumstantial evidence corroborating Susan's account of Cedillo's sexual contact when she recalled that Susan "complain[ed] of her bottom hurting when she would go to the bathroom" when she and Father picked up Susan from her Del Rio home for visits. Susan also testified that her last sexual encounter occurred when she was eight or nine years old and lived in Center Point.

Second, Cedillo's implicit contention that the evidence is insufficient to establish that at least two sexual encounters occurred in Val Verde County is equally unavailing. In *Meraz v. State*, 415 S.W.3d 502, 506 (Tex. App.—San Antonio 2013, pet. ref'd), the defendant in a continuous sexual abuse of a child case contended that the evidence was insufficient "to support the conviction because the jury could not rationally have concluded that the acts of sexual abuse constituting the offense all occurred in Tarrant County." We observed:

> The allegation that the offense was committed in Tarrant County is a venue allegation, and the State may always allege that the offense was committed in the county where the prosecution is carried on. TEX. CODE CRIM. PROC. ANN. art. 13.17. Venue is not a constituent element of the offense charged. *Skillern*[ *v. State*, 890 S.W.2d 849, 860 (Tex. App.—Austin 1994, pet. ref'd), *abrogate on other grounds by Ex parte Pue*, 552 S.W.3d 226, 232 n.21 (Tex. Crim. App. 2018)]; *State v. Blankenship*, 170 S.W.3d 676, 682 (Tex. App.—Austin 2005, pet ref'd). Venue need not be proven beyond a reasonable doubt and, the State's failure to prove venue does not negate the guilt of the accused. *Fairfield*[ *v. State*, 610 S.W.2d 771, 779 (Tex. Crim. App. [Panel Op.] 1981)].

> To sustain the allegation of venue, the State's burden is only to prove by a preponderance of the evidence that the county where the offense is prosecuted has venue. TEX. CODE CRIM. PROC. ANN. art. 13.17. On appeal, we presume that venue was proved in the trial court unless it was disputed in the trial court or the record affirmatively shows the contrary. TEX. R. APP. P. 44.2(c)(1). Appellant did not dispute venue in the trial court, and the record does not affirmatively negate Tarrant County as a county of proper venue.

*Meraz*, 415 S.W.3d at 506. As in *Meza*, Cedillo did not dispute venue in the trial court and, on appeal, he has not explained how the record affirmatively negates Val Verde County as a county of proper venue.

Third, Cedillo highlights the "presence of other men in the home," implicitly positing the scenario that these "other men" committed the sexual abuse for which he was charged and arguing that this scenario "was never discredited beyond a reasonable doubt." The identity of a perpetrator may be proven by direct or circumstantial evidence, "coupled with all reasonable inferences from that evidence." *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The "beyond a reasonable doubt" standard "does not require the State to disprove every conceivable alternative to a defendant's guilt." *Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015). As already noted, Susan's testimony alone is sufficient to support Cedillo's conviction for continuous sexual abuse of a child, TEX. CODE CRIM. PROC. ANN. art. 38.07(b)(1), and the State need not have disproved Cedillo's "other men" theory. *See Ramsey*, 473 S.W.3d at 808.

Fourth, Cedillo highlights his testimony that Susan recanted her allegation, and he argues that her recantation somehow renders the evidence insufficient. Cedillo's recollection of Susan's recantation does not render her in-court testimony insufficient. *See Jackson v. State*, 110 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("[A] criminal conviction, which requires proof beyond a reasonable doubt, may rest on hearsay despite the lack of the complainant's testimony or even the complainant's recantation."); *see also Saldana v. State*, 287 S.W.3d 43, 60 (Tex. App.—Corpus Christi 2008, pet. ref'd) ("[I]t is up to the fact finder to determine whether to believe the original statement or the recantation[;]" "[a] factfinder is fully

entitled to disbelieve a witness's recantation."). The jury was the exclusive judge of the weight to be given to Cedillo's assertion that Susan had recanted her allegations, Susan's in-court testimony of Cedillo's sexual contact with her, and Negrete's recollection of her forensic interview with Susan. *See Brooks*, 323 S.W.3d at 899. We overrule Cedillo's first issue.

**C.      Ineffective Assistance of Counsel**

In Cedillo's second issue, he contends that his trial counsel was ineffective for failing to conduct a reasonable investigation.

**1.      Standard of Review**

Under the Sixth Amendment to the United States Constitution and section ten of Article 1 of the Texas Constitution, a criminal defendant is entitled to be represented by effective, competent counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing U.S. CONST. amend. VI and TEX. CONST. art. 1, § 10). A criminal defendant, however, is not entitled to a flawless performance from counsel; "isolated lapses or mistakes during the trial are not necessarily indicative of ineffectiveness." *Calderon v. State*, 950 S.W.2d 121, 128 (Tex. App.—El Paso 1997, no pet.) (citing *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992)). Rather, the defendant must show that counsel's performance was deficient to the extent that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

To prevail on a claim of ineffective assistance of counsel, Cedillo must establish by a preponderance of evidence that (1) his trial counsel's performance was deficient, and that (2) the deficient performance deprived him of a fair trial. *Strickland*, 466 U.S. at 687; *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex. Crim. App. 2005). Cedillo must satisfy both *Strickland* elements, and the failure to show either deficient performance or prejudice will defeat the claim. *Perez v. State*,

310 S.W.3d 890, 893 (Tex. Crim. App. 2010); *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).

Under the first prong of the *Strickland* test, Cedillo must show his trial counsel's performance fell below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Stated otherwise, he must show trial counsel's actions do not meet the objective norms for professional conduct of trial counsel. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). We presume, however, that trial counsel's representation fell within the wide range of reasonable and professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). Ineffective assistance claims must be firmly founded in the record to overcome this presumption. *Thompson*, 9 S.W.3d at 813; *Coffman v. State*, 465 S.W.3d 797, 800 (Tex. App.—Fort Worth 2015, no pet.) (recognizing that an ineffective assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate the meritorious nature of the claim."). Consequently, a direct appeal is usually an inadequate vehicle for raising an ineffective assistance of counsel claim because the record is generally undeveloped as to why trial counsel did what he or she did. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson*, 9 S.W.3d at 814 n.6.

Generally, in the absence of direct evidence of trial counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can be imagined. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). In more rare circumstances, a court may address an ineffective assistance claim when the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392 (internal quotes omitted); *see also Rylander*, 101 S.W.3d at 111 (noting that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective"). In deciding whether a case falls into that category, the key question is whether trial "counsel's performance

[fell] below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as he did." *See Ex parte Bryant*, 448 S.W.3d 29, 39–40 (Tex. Crim. App. 2014) (internal brackets omitted). As the Texas Court of Criminal Appeals has noted, however, this poses a "difficult hurdle to overcome," *Lopez*, 343 S.W.3d at 143, and, a "reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim." *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). Under the second *Strickland* prong, in a case that was actually tried, the defendant must establish that there is a reasonable probability that but for trial counsel's deficient performance, the outcome of the case would have been different. *See Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A "reasonable probability" is that which is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998) (per curiam).

### 2. Applicable Law

In general, trial counsel has a duty to conduct a reasonable investigation to assist his client's case, or to make a reasonable decision that a particular investigation is not necessary. *See Strickland*, 466 U.S. at 691; *see also Wiggins v. Smith*, 539 U.S. 510, 521–23 (2003); *Ex parte Martinez*, 195 S.W.3d 713, 721 (Tex. Crim. App. 2006); *Aldrich v. State*, 296 S.W.3d 225, 244 (Tex. App.—Fort Worth 2009, pet. ref'd) (en banc). A claim for ineffective assistance based on trial counsel's general failure to investigate the facts of the case fails absent a showing of what the investigation would have revealed that reasonably could have changed the result of the case. *See Cooks v. State*, 240 S.W.3d 906, 912 (Tex. Crim. App. 2007). Likewise, a claim for ineffective assistance based on trial counsel's failure to interview a witness cannot succeed absent a showing of what the interview would have revealed that reasonably could have changed the result of the

case. *See Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994); *Walker v. State*, 195 S.W.3d 250, 255–56 (Tex. App.—San Antonio 2006, no pet.).

### 3. Analysis

Cedillo references two categories of evidence — records and witness interviews — in support of his contention that his trial counsel failed to conduct a reasonable investigation. First, Cedillo contends that his trial counsel should have sought his payroll records, which may have provided "an alibi," and potential investigative records from Child Protective Services, which may have established "strange men" who visited Susan's mother were the sexual assailants. Second, Cedillo contends that his trial counsel failed to interview (1) Mother, (2) his out-of-state relatives, (3) Susan's three younger siblings, and (4) Susan's maternal grandmother. As with the document discovery that Cedillo finds lacking, he implicitly argues that these witness interviews may have unearthed potentially exculpatory evidence.

Cedillo fails to detail what the two missing categories of evidence would have revealed that reasonably could have changed the result of the case. Accordingly, his ineffective assistance of counsel claim fails. *See Jordan*, 883 S.W.2d at 665 (holding conclusory affidavit that failed to say "what further investigation would have revealed" or what "witnesses would have said to exculpate" defendant did not "put the trial judge on notice that reasonable grounds existed to believe counsel's representation may have been ineffective"); *Walker*, 195 S.W.3d at 255–56. We overrule Cedillo's second issue.

### III. CONCLUSION

We dismiss for want of jurisdiction Cedillo's challenge to the aggravated sexual assault of a child count and affirm the remainder of the trial court's judgment.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH