

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00478-CR

Ruth Ann **COMER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-CR-0678
Honorable Jennifer Peña, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:    Rebeca C. Martinez, Chief Justice
    Adrian A. Spears II, Justice
    H. Todd McCray, Justice

Delivered and Filed: March 5, 2025

AFFIRMED

A jury convicted appellant Ruth Ann Comer on two counts of solicitation to commit capital

murder for renumeration, each a first-degree felony, of Jacob Thomas, Comer's son, and Christina

Moore,[1] Thomas's wife. *See* TEX. PEN. CODE ANN. §§ 19.03(a)(3); 15.03. The trial court assessed

punishment at imprisonment for twenty years in the Texas Department of Criminal Justice–

---

[1] The indictment spells Moore's first name "Kristina," but the reporter's record spells it "Christina."

Institutional Division for each count, to run concurrently. In three issues, which we categorize at two, Comer contends that: (1) she was rendered ineffective assistance of counsel because her trial counsel failed to: (a) request an accomplice witness instruction, and (b) argue that the indictment should be dismissed because solicitation to commit capital murder is subject to the residual three-year statute of limitations period, *see* TEX. CODE CRIM. PROC. ANN. art. 12.01(9), and the underlying indictment was brought beyond this limitations period; and (2) the trial court erred in overruling her request to redact from audio-visual exhibits her statements of a murder-for-hire plot against Jerry Collins, Comer's deceased boyfriend. We affirm.

## I. BACKGROUND

At trial, the jury considered, among other things, the testimony of Charles Grube, his daughter, Teri Sides, and audio-visual recordings made as part of a police investigation.

Sides testified that Thomas and Moore had previously lived in a house that was partly owned by Comer, and they were responsible for paying the property taxes on the house. However, according to Sides, Moore stole the money intended to pay the property taxes, and the house was in danger of a tax foreclosure proceeding. Thereafter, Sides recalled that Comer asked Grube to kill Thomas and Moore. Sides reported Comer's proposition to the police.

As part of their investigation into Sides's report, San Antonio Police Department detectives and technicians set up audio-visual recording equipment that captured a meeting between Grube, Sides, Comer, and an unidentified individual. The audio and visual recordings, offered by the State as two separate exhibits, were initially admitted without objection. The audio[2] from a conversation provides in relevant part:

---

[2] The appellate record does not contain a transcription of the audio recording, and no party has provided us with a transcription of it. *See Watts v. State*, No. 14-23-00194-CR, 2024 WL 4456959, at *2 n.1 (Tex. App.—Houston [14th Dist.] Oct. 10, 2024, no pet.) (mem. op., not designated for publication) ("The audio recording of the interview was not transcribed in the record. However, appellant, in his brief, provides an un-certified transcription of the audio

GRUBE               What happened?

UNIDENTIFIED        Talking about — ugh — that two-hundred and fifty that Christina — got off — got off — of Ruth.

SIDES               She got two-hundred and fifty off you?

COMER               Two-hundred and fifty thousand.

SIDES               She got two-hundred fifty thousand off you?

. . .

GRUBE               Have you got a [sic] address — on your son and all?  Write it down how can we get there me and my boy.  [Inaudible]

GRUBE               Are you going to take care of me in a little way?

COMER               Which payment [inaudible].

GRUBE               You know helping me out and everything.

COMER               As soon as I get my paycheck, yeah.  Cause I haven't even gotten my payment for being the executor yet.

GRUBE               Yeah.

COMER               At least that I haven't paid off my car yet.  I haven't even gotten [inaudible]

GRUBE               You know it's going to be a lot easier now since the kids have been taken.  So, there ain't [sic] going to be no kids there.

COMER               [Inaudible].  If I tell you, you can write it down.

GRUBE               Teri can write it for me.

SIDES               What?

GRUBE               You might have to re-write this for me to read it.

SIDES               [Inaudible].  What am I re-writing?

---

recording, uncontested by the State, consistent with our review of the exhibit in the record."). We endeavor to provide as accurate a recitation of the relevant portions of the audio recording as possible.

GRUBE          Just what she wrote.  Tell me how to get to her son-in-law's [sic] and daughter's place.

SIDES          Okay.  What is it?

COMER          You go down Walzem to Eagle Crest.

SIDES          You go down Walzem to Eagle Crest.  Okay.[3]

COMER          Take a left.

SIDES          Alright, take a left.  Okay.

COMER          Go down to the next blinking light; take a right.  [Inaudible].

SIDES          And take a right?

COMER          Yeah.

SIDES          [Inaudible] okay.

COMER          The trailer park is on the left, it's right after you go down the hill.

SIDES          Trailer park on the left.

COMER          Go in the second entrance.

SIDES          On the left at the bottom of the hill?  Second entrance?

GRUBE          You said something about Christina threatening you or something now?

COMER          No she's not threatening me.

---

[3] Sides testified that Comer began writing down directions to the recreational vehicle park ("RV park") where Thomas and Moore resided.  However, because Comer's hand was shaking, Sides completed the task of writing down the directions.  The handwritten note, which was admitted, provides:

*go Down Walzem to Eagle Crest Take left Down to Blinker* [sic] *Light*

*go down to Walzem to eagle crest take left at light go to next blinking light take right crest view trailer park on left bottom of hill second entrance go to the end take right lot* [illegible]

*white trailer*

*Happy trails*

| | |
|---|---|
| SIDES | She told you to watch your back because of Alice? |
| COMER | All the way up to the very end — take a right.  And, it's lot 63. |
| SIDES | Lot 63?  Okay? |
| COMER | It's a white trailer. |
| GRUBE | And what park — what trailer park — is Christina in then now? |
| COMER | Happy Trails. |
| GRUBE | Happy Trail.  You have a lot number? |
| COMER | [Inaudible]. |
| GRUBE | Can you go in, so it's just right there in the front?  Yeah, my boy's supposed to be here tonight.  I'm supposed to have everything ready.  Going to quick, pass, and go.  Anybody else? [Grube laughs]. |
| COMER | Just those two. |
| GRUBE | Okay. |

. . .

| | |
|---|---|
| GRUBE | That'll work.  That — that — should be everything that I need right there then to find that one.  Because I couldn't remember — from what you'd told me before — you know — how to get there.  Now, how many people are in that house? |

. . .

| | |
|---|---|
| GRUBE | Did you — did — you know the guy that did that? |
| COMER | Did what? |
| GRUBE | That kill him.  That kill Jerry.  Do you know the guy? |
| COMER | [Inaudible]. |
| GRUBE | What's his name?  Come on figure it out for me? |

COMER   Uh.  You're going to beat me to it.

GRUBE   Uh-hm.  I want his Harley.

COMER   [Inaudible].

GRUBE   Oh, he don't.

COMER   He wrecked it.

GRUBE   Go figure.  Do the best though — where nothing comes back.

. . .

COMER   But you know, I didn't tell him to do it.  Christina did.

GRUBER   Right.

COMER   I never once told this young man, "want you to kill Jerry." Christina's the one that told him she'd have him paid to kill him.  Because, who benefited?

GRUBE   Christina.

COMER   That's right.  She's gotten all the money.  I've got none.

GRUBE   Hmm.  She ain't getting no more.  [Grube laughs].  Cause they're still driving by here.  Oh, yeah.  We got people telling us.  We got one person just came over here a little while ago — had a picture of them sitting in the vehicle.  Yup.

COMER   Now this is going to sound crazy to you.  Are you guys —

GRUBE   What?

COMER   You're not a cop are you?

GRUBE   Nope.

COMER   Okay.

GRUBE   Do I look like a cop?  [Grube laughs].  No, I'm no cop.  I'm a bandido.

COMER   Okay.

. . .

GRUBE          [Inaudible]. But yeah. I'm going to go ahead and get this — I been born — get ready. He's coming and — uh — hey I was told to get everything ready to where it can be done and done. So, you won't have nobody bothering you no more.

Grube testified that Comer offered to pay him with money or a Harley Davidson to kill Thomas and Moore. Grube further testified that Comer provided him with a pistol to carry out the murders.

The jury found Comer guilty on both counts of solicitation to commit capital murder for renumeration, and the trial court assessed punishment at imprisonment for twenty years. Comer timely appeals.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Standard of Review

Under the Sixth Amendment to the United States Constitution and section ten of Article 1 of the Texas Constitution, a criminal defendant is entitled to be represented by effective, competent counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing U.S. CONST. amend. VI and TEX. CONST. art. I, § 10). A criminal defendant, however, is not entitled to a flawless performance from counsel; "isolated lapses or mistakes during the trial are not necessarily indicative of ineffectiveness." *Calderon v. State*, 950 S.W.2d 121, 128 (Tex. App.—El Paso 1997, no pet.) (citing *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992)). Rather, "the defendant must show that counsel's performance was deficient, to the extent that counsel failed to function as the 'counsel' guaranteed by the Sixth Amendment." *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

To prevail on a claim of ineffective assistance of counsel, Comer must establish by a preponderance of evidence that (1) her trial counsel's performance was deficient, and (2) the deficient performance deprived her of a fair trial. *Strickland*, 466 U.S. at 687; *Ex parte Chandler*, 182 S.W.3d 350, 354 (Tex. Crim. App. 2005). Comer must satisfy both *Strickland* elements, and the "failure to show either deficient performance or prejudice will defeat" the claim. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010); *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).

Under the first prong of the *Strickland* test, Comer must show her trial counsel's performance fell below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Stated otherwise, she must show trial counsel's actions do not meet the objective norms for professional conduct of trial counsel. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). We presume, however, that trial counsel's representation fell "within the wide range of reasonable and professional assistance." *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). Ineffective assistance claims must be firmly founded in the record to overcome this presumption. *Thompson*, 9 S.W.3d at 814; *Coffman v. State*, 465 S.W.3d 797, 800 (Tex. App.—Fort Worth 2015, no pet.) (recognizing that an ineffective assistance claim must be firmly founded in the record, and the record must affirmatively demonstrate the meritorious nature of the claim.). Consequently, a direct appeal is typically an inadequate vehicle for raising an ineffective assistance of counsel claim because the record is generally undeveloped as to why trial counsel did what he or she did. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson*, 9 S.W.3d at 814 n.6.

Generally, in the absence of direct evidence of trial counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can be imagined. *Garcia v.*

*State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). In more rare circumstances, a court may address an ineffective assistance claim when the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392 (internal quotes omitted); *see also Rylander*, 101 S.W.3d at 111 (noting that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective."). In deciding whether a case falls into that category, the key question is whether trial "counsel's performance [fell] below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as he did." *See Ex parte Bryant*, 448 S.W.3d 29, 39–40 (Tex. Crim. App. 2014) (internal brackets omitted). As the Texas Court of Criminal Appeals has noted, however, this poses a "difficult hurdle to overcome," *Lopez*, 343 S.W.3d at 143, and, a "reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim." *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). Under the second *Strickland* prong, in a case that was actually tried, the defendant must establish that there is a reasonable probability that but for trial counsel's deficient performance, the outcome of the case would have been different. *See Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A "reasonable probability" is that which is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998) (per curiam).

**B.    Accomplice Witness Instruction**

In Comer's first sub-issue, she argues that Grube and Sides were accomplices and that, in relation to the first *Strickland* prong, her trial counsel was ineffective because trial counsel failed to request that an accomplice witness instruction be included in the jury charge in accordance with article 38.14 of the Texas Code of Criminal Procedure. Comer specifically argues that:

if accomplice witness instructions had been given below, this jury would have received written admonishment that Teri Sides and Charles Grube could not corroborate one another. As it is, however, the jury below was left with a distinct and false impression that father and daughter *could* — and in fact did — corroborate one another's claims.

Comer references a passage from the State's closing argument wherein it argued that "[t]he video is corroboration. The note is corroboration. To a certain extent, Teri [Sides] is a corroboration."

The jury charge in this case instructed, among other things, that "[a] person may not be convicted of the offense of criminal solicitation on the uncorroborated testimony of the person allegedly solicited and unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor's intent that the other person act on the solicitation." During her closing statement, Comer's trial counsel emphasized that the jury charge is "very, very important," re-read a portion of the corroboration instruction, and argued that it "means that we're going to need a lot of evidence to corroborate Charles Grube. A lot. And in this case, there is none."

The instruction included in the jury charge largely comports with the one articulated in section 15.03(b) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 15.03(b). However, our criminal statutes include other corroboration instructions, such as the one in article 38.14 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 38.14. A side-by-side comparison of these instructions reveals:

| Criminal Solicitation[4] | Testimony of Accomplice[5] |
| --- | --- |
| A person may not be convicted under this section on the uncorroborated testimony of the person allegedly solicited and unless the solicitation is made under circumstances strongly corroborative of both the solicitation | A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense. |

---

[4] TEX. PENAL CODE ANN. § 15.03(b).
[5] TEX. CODE CRIM. PROC. ANN. art. 38.14.

> itself and the actor's intent that the other person act on the solicitation.

The section 15.03(b) instruction that was included in the jury charge in this case is specific to solicitation cases whereas the article 38.14 instruction applies in non-solicitation cases. *See Claxton v. State*, 124 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) ("We read section 15.03(b) in conjunction with article 38.14 of the Texas Code of Criminal Procedure, which addresses accomplice-witness corroboration in non-solicitation cases."). "Reading [section] 15.03(b) in conjunction with [article] 38.14, the corroboration in criminal solicitation cases must link the defendant to the crime at two separate stages." *Richardson v. State*, 700 S.W.2d 591, 594 (Tex. Crim. App. 1985). "According to the language of 15.03(b) the evidence must be 'corroborative of both [1] the solicitation itself and [2] the actor's intent that the other person act on the solicitation.'" *Id.* (quoting TEX. PENAL CODE ANN. § 15.03(b)).

Returning to Comer's argument, her brief makes no reference to the section 15.03(b) instruction that was included in the jury charge. She fails to explain why an article 38.14 instruction is more apt than a section 15.03(b) instruction, or what objections or requests a trial counsel exercising objective norms of professional conduct, *Mitchell*, 68 S.W.3d at 642, would have made to remedy the errors, if any, in the section 15.03(b) instruction that was already included in the jury charge. Accordingly, Comer's complaint that her trial counsel was ineffective because she failed to request that an accomplice witness instruction be included in the jury charge fails under the first *Strickland* prong.

## C.    Limitations

In Comer's second sub-issue, she generally argues that because capital murder is not distinctly linked to a specific limitations period, *see* TEX. CODE CRIM. PROC. ANN. art. 12.01(1), then the residual three-year limitations period applies to the solicitation counts, *see id.*

at art. 12.03(c),[6] and bars the State from prosecuting her on them.[7] *See id*. at art. 12.01(9).  Comer

acknowledges that *Demouchette v. State*, 731 S.W.2d 75, 80 (Tex. Crim. App. 1986), is "contrary

caselaw" to her contention.  Nevertheless, she contends that the statutory-interpretation framework

endorsed by *State v. Schunior*, 506 S.W.3d 29, 38 (Tex. Crim. App. 2016) ("As a rule of statutory

interpretation, the express mention or enumeration of one person, thing, consequence, or class is

tantamount to an exclusion of all others." (internal quotation marks and citation omitted)), means

that a charge of solicitation of capital murder is governed by the residual three-year limitations

period in article 12.01(9), *see* TEX. CODE CRIM. PROC. ANN. art. 12.01(9), because article

12.01(a)'s no limitations provision includes specific crimes, such as "murder and manslaughter,"

*see id*. at art. 12.01(1)(A), but not "capital murder."  Therefore, according to Comer, her trial

counsel was ineffective because she failed to assert the limitations defense that Comer now

articulates.

The State responds by arguing that Comer's contention was rejected by the Texas Court of

Criminal Appeals in *Demouchette*, 731 S.W.2d at 80, and *Fearance v. State*, 771 S.W.2d 486,

494–95 (Tex. Crim. App. 1988).  In *Fearance*, 771 S.W.2d at 494–95, the Texas Court of Criminal

Appeals wrote:

> In appellant's ninth point of error, he contends that his conviction is void because
> the prosecution was barred by the statute of limitations.  He states that the instant
> offense was committed on December 23, 1977.  His indictment was returned more
> than three years after this offense.  Appellant contends that [TEX. CODE CRIM.
> PROC. ANN. art. 12.01] makes no provision for capital murder.  Appellant states the
> general three year limitation provided for all offenses which are not specifically
> limited by Art. 12.01 applies to his case.

---

[6] "The limitation period for criminal solicitation is the same as that of the felony solicited."  TEX. CODE CRIM. PROC. ANN. art. 12.03(c).

[7] In the first issue of Comer's amended brief, she asserted that she may raise a limitations defense for the first time on appeal.  In a subsequent letter, Comer acknowledges that *Proctor v. State*, 967 S.W.2d 840, 844 (Tex. Crim. App. 1998), held that a statute of limitations defense "is forfeited if not asserted at or before the guilt/innocence stage of trial."  Comer's letter may be construed as a withdrawal of the first issue presented in her amended brief.  In any event, the merits of Comer's contention are analyzed as part of her second ineffective assistance of counsel claim.

> We disagree. In *Demouchette v. State*, 731 S.W.2d 75 (Tex. Crim. App.1986), this Court rejected the same argument. This Court held that, "Capital murder is a species of murder and as such is provided for by Art. 12.01(1)." *Demouchette*, supra, at 80. Therefore, there is no limitation for the offense of capital murder. Point of error nine is overruled.

*Fearance*, 771 S.W.2d at 494–95. "The limitation period for criminal solicitation is the same as that of the felony solicited." TEX. CODE CRIM. PROC. ANN. art. 12.03(c).

Comer's argument is akin to the one rejected in *Fearance*, 771 S.W.2d at 494–95, and she has no quarrel with article 12.03(c)'s application. Accordingly, Comer's limitations contention fails under the first *Strickland* prong.

We overrule Comer's first issue.

### III. EVIDENTIARY OBJECTION

In Comer's second issue, she complains that the trial court "erred by refusing to redact from the State's audio-visual exhibits . . . statements showing that appellant had personal knowledge of a separate murder-for-hire plot targeting Jerry Collins." The State responds by arguing that Comer's second issue (1) is inadequately briefed in that it fails to articulate a specific ground (e.g. relevancy, prejudice, or inadmissible character evidence); (2) is unpreserved because the audio-visual exhibits were admitted without objection and, only before publication, did Comer object; (3) even if preserved, admission was not an abuse of discretion; (4) Comer's issue is inadequately briefed as to any potential harm; and (5) even if adequately briefed, the error, if any, was harmless.

The erroneous admission of evidence is non-constitutional error. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). Texas Rule of Appellate Procedure 44.2(b) sets out the proper standard for analyzing whether non-constitutional error resulted in harm. *Becerra v. State*, 685 S.W.3d 120, 144 (Tex. Crim. App. 2024) (citing TEX. R. APP. P. 44.2(b)). Under this

standard, any non-constitutional error that does not affect substantial rights must be disregarded. *Id*. (citation omitted). An error affects substantial rights only if it has a substantial or injurious effect in determining the jury's verdict. *Id*. If, on the other hand, after an examination of the record as a whole we have a fair assurance that the error did not influence the jury, or had but a slight effect, a reviewing court should not overturn the conviction. *Id*.

Assuming without deciding that Comer adequately briefed a complaint regarding the trial court's overruling of a specific objection (again assuming that such objection was articulated below and before us), the trial court's error, if any, was harmless. The extent of Comer's harm analysis is:

> Here, a substantial and injurious effect is clearly present because appellant may well have been convicted simply out of fear that she had helped target Jerry Collins, and not Jacob Thomas or Kristina Moore. As such, given the trial court's ruling diminished appellant's right to be convicted for *only* the conduct charged in *this* case, the judgment below should be reversed and a new trial granted.

Comer's harm analysis makes no mention of her other statements and responses to Grube's statements that were captured on the audio recording and that we have recounted above. For example, after Comer provides Grube with directions to Thomas and Moore's trailer, Grube asks, "[a]nybody else" and then laughs. Comer responds with, "[j]ust those two." Later in the conversation, Comer complains that Moore's "gotten all the money. I've got none." To which, Grube responds, "[s]he ain't getting no more." Lastly, Comer asks Grube, "[y]ou're not a cop are you?" In light of this evidence, we have a fair assurance that the error, if any, did not influence the jury. *Id*.

We overrule Comer's second issue.

## IV. Conclusion

We affirm the trial court's judgment.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH